IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH MUNSON,

    Plaintiff,                      No. 2:09-cv-0478 JAM EFB P

    vs.

STATE OF CALIFORNIA,

    Defendants.                    FINDINGS AND RECOMMENDATIONS

        Plaintiff is a state prisoner proceeding with counsel in an action brought under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Defendants have moved for summary judgment. Dckt. No. 38. For the reasons that follow, the undersigned recommends that the motion be granted in part and denied in part.

**I.    Background**

        This action proceeds on the complaint filed November 5, 2008. Dckt. No. 1. The parties do not dispute the following facts, except where noted: Plaintiff was an inmate in a California prison at the time period covered in the complaint (he has since been released). Dckt. No. 39, Def.'s Separate Statement of Undisputed Facts ISO Def.'s Mot. for Summ. J. (hereinafter "DUF") 1; Dckt. No. 42-1, Pl.'s Response to DUF (hereinafter "PUF") 1. Plaintiff ambulates with the help of a wheelchair. DUF 2; PUF 2. (Plaintiff alleges that he is a paraplegic. Dckt.

1

1 No. 1 at 2.). In June 2007, prison officers transported plaintiff from a hospital in Bakersfield to
2 the California Medical Facility in Vacaville ("CMF"). DUF 3; PUF 3. Plaintiff had been at the
3 Bakersfield hospital for approximately two months for treatment of sores on his heels and
4 buttocks. DUF 4; PUF 4. Plaintiff was transported in a special van used for wheelchair-bound
5 individuals. DUF 5; PUF 5. He was placed in the open area at the back of the van, in his
6 wheelchair, and restrained with cuffs around his ankles and a waist restraint. DUF 6, 7; PUF 6,
7 7. Additionally, plaintiff's wheelchair was restrained during transport so that it could not move
8 around during the drive. DUF 8; PUF 8. Plaintiff alleges that he requested to be transported
9 lying down or to have the restraints loosened, but those requests were denied. Dckt. No. 1 at 2.
10 Plaintiff alleges that the seven-hour transport, in which he was unable to shift his body weight,
11 caused him to develop painful pressure sores. *Id.* at 2-3. According to defendant, during the
12 review of plaintiff's administrative appeal requesting transport lying down, a doctor determined
13 that plaintiff was "very functional" and that there was "no indication that he required an
14 ambulance or to lie down for all outside appointments." DUF 16. Plaintiff disputes this fact as
15 lacking support by admissible evidence, PUF 16, but the administrative appeal documentation
16 appended to plaintiff's deposition supports defendant's assertion, and plaintiff has raised no
17 formal objection to that evidence. Dckt. No. 41-5, Munson Dep. at 67 (Ex. 6).

18 Plaintiff complains that from June through November 2007, he was housed in a cell at
19 CMF where he could not use the toilet because it was not accessible to him. DUF 18; PUF 18.
20 Plaintiff was moved to a single cell. DUF 19; PUF 19. Plaintiff declares that the toilet in the
21 single cell also did not have an accessible toilet, and defendants make no effort to dispute that
22 assertion. Dckt. 42-2, Munson Decl. ¶ 11 & Attachment A. Prison officials provided plaintiff
23 with incontinence pads to line his bed and avoid soiling it. DUF 20; PUF 20. According to
24 plaintiff, without the aid of gravity to defecate, he was forced to use his fingers to evacuate his
25 bowel movements. Munson Decl. ¶ 10. Prison officials also offered plaintiff a rolling commode
26 to use. DUF 28; PUF 28. Plaintiff declares that, while he could get onto the rolling commode

with great effort, using it caused him great pain. Munson Decl. ¶ 12.

Plaintiff also alleges that the wheelchair accessible shower at his housing unit at CMF had stainless steel benches that did not come far enough away from the wall, causing him to slide off the bench. DUF 21, 24; PUF 21, 24. Nevertheless, plaintiff was able to shower regularly while at CMF. DUF 25; PUF 25.

Plaintiff has testified that he has used condom catheters for 25 years. DUF 29; PUF 29; *see also* Munson Decl. ¶ 15 (attesting that plaintiff uses condom catheters to drain his bladder and prevent himself from soaking himself with urine when he coughs). According to plaintiff, condom catheters can be purchased in a pharmacy without a prescription. DUF 30; PUF 30. Medical staff at CMF gave plaintiff an in-dwelling catheter hose rather than condom catheters on his arrival at CMF. DUF 31; PUF 31; Munson Decl. ¶ 16. Plaintiff attests that the in-dwelling catheter caused irritation. *Id.* Plaintiff requested condom catheters in June 2007, but attests that he did not receive them for six months. Munson Decl. ¶ 17; Munson Dep. at 61 (Ex. 4). According to defendant, CMF medical staff did not give plaintiff condom catheters for a period of two months "because they had run out," but reordered them. DUF 35, 36. Plaintiff disputes these facts on the basis that defendant fails to offer admissible evidence of them (PUF 35, 36), but the administrative appeal documentation attached to plaintiff's deposition supports defendant's assertions, and plaintiff has not formally objected to that evidence. Munson Dep. at 61 (Ex. 4). As of December 12, 2007, plaintiff was satisfied with his catheter supply. DUF 37; PUF 37.

Plaintiff alleges that the canteen at CMF had more items available for non-disabled prisoners than it does for disabled prisoners and that plaintiff could not buy coffee, Top Ramen, or candy. DUF 42, 43; PUF 42, 43. Plaintiff concedes that the availability of canteen items at CMF hinged on an inmate's housing in the prison hospital rather than his disability status. DUF 46, 47; PUF 46, 47.

////

Plaintiff makes some additional allegations in his complaint that defendant has not addressed in the instant motion for summary judgment:

> [O]n June 30, 2007, in the very first shower experience after his transportation nightmare identified [above], [plaintiff] injured himself. He was brought to the shower facilities by prison official, "F. Watts." Without any grab bars to hang onto, he ended up slipping off the bench falling to the floor and smacking his hip and legs, aggravating previous injuries. He lied bleeding on the floor of the shower for some time before a nurse and official came to assist him.
>
> \*\*\*
>
> Aggravated or caused by the injuries sustained in the fall in the shower room, the plaintiff has been experienc[ing] significant pain in his lower back and hip. Moreover, he has fractured that hip and has broken Harrington rods in his back and the wires that hold the rods to his vertebras are unraveling and poking him in his muscles and nerves, causing pain and causing him to lose his breath. He has complained repeatedly that he is not getting adequate (or any) treatment for these injuries. He was told over a period of months that he was going to be seeing an outside orthopedic specialist.
>
> Finally, after ten months, on March 17, 2008, he was taken to see Dr. Burch in San Francisco about the rods that broke in his back and about his June 2007 fall. He was supposed to be transported in an ambulance. But on the day of transportation they put him in a van. When he returned from that trip, he was bedridden for days because his right hip and leg were swollen. Dr. Burch had not been informed about the fall and injury to the lower back and said he would set it for a CAT scan.

Dckt. No. 1 at 3, 4; *see also id.* at 8 (alleging that defendant's failure to provide appropriate medical care to plaintiff violated the ADA).

## II. Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a

1  jury.

2  The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a

circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

6

*Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*  If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

**III.   Analysis**

Governing Law.  Title II of the ADA requires public entities to provide equal access to services, activities, and programs.  42 U.S.C. § 12132.  The RA similarly bars discrimination on the basis of disability in the provision of benefits by programs receiving federal funding.  29 U.S.C. § 794.  To establish a defendant's liability under these statutes, a plaintiff must show that: (1) he or she is a qualified individual with a disability; (2) he or she was excluded from or denied services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  *Weinrich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  To succeed on an RA claim, the plaintiff must additionally show that the public entity received federal funding.  *Id.*

////

Where the public entity in question is a prison, the plaintiff must also show that the conduct complained of was not reasonably related to a legitimate penological interest. *Gates v. Rowland*, 39 F.3d 1439, 1446-47 (9th Cir. 1994).

<u>Transportation Claim.</u>  Defendant first argues that summary adjudication of plaintiff's claim regarding the transport of June 2007 is appropriate because the undisputed facts show that plaintiff did not need the requested accommodations (lying down, loosened restraints) to partake of the service of transportation from the outside medical facility in Bakersfield to CMF in Vacaville, and thus plaintiff cannot show he was excluded from transport.  According to defendant, "the ADA requires accommodations only when they are necessary to prevent discrimination based on a disability; . . . it does not require accommodations to make a service or activity more convenient or comfortable."  Dckt. No. 38, Def.'s P. & A. ISO Def.'s Mot. for Summ. J. at 10 (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682 (2001)).  Plaintiff responds that the ADA and RA require *equal* access, not just access, and that plaintiff was not able to enjoy the transport service equally as well as non-disabled persons because his specific disability made transportation while sitting shackled in his wheelchair painful and injury-inducing.

Defendant's argument is unpersuasive.  Under defendant's reasoning, it would be acceptable under the ADA and RA to offer an accommodation which makes a service accessible only at the cost of extreme pain and injury to the disabled person.  None of the cases cited by defendant proffer such a reading of those statutes.  In *Martin*, the Supreme Court simply noted that the parties did not dispute that the accommodation at issue was necessary for the plaintiff, because he could not participate in the service without it.  532 U.S. at 682.  In doing so, the Court noted that it was not faced with a situation where the disabled individual could access the service with discomfort or difficulty, and that, in such a case, "an accommodation might be reasonable but not necessary."  *Id.*  That language was dicta.  Moreover, the facts here are not that plaintiff could access the transport with discomfort or difficulty, but rather that he could access it only through extreme pain and injury.

8

As plaintiff has argued, under the applicable regulations it was defendant's obligation not simply to offer the transport service to plaintiff, but to offer it to him in such a way that he could derive equal benefit from it as persons who do not suffer from plaintiff's disability and who therefore do not face pain and injury as a consequence of using the service. 28 C.F.R. § 35.130(b)(1) ("A public entity, in providing any aid, benefit, or service, may not, . . . on the basis of disability, . . . [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[,] provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[,] . . . [or o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service."); *Gorman v. Bartsch*, 152 F.3d 907, 913 (8th Cir. 1998) (holding that a plaintiff stated a claim under the ADA and RA where he alleged that he was denied post-arrest transportation "in a safe and appropriate manner consistent with his disability.").

Defendant further argues that plaintiff's claim for damages under the ADA and RA fails because plaintiff cannot show that defendant acted with deliberate indifference in utilizing the method of transport at issue. "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, 11 a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Id.* Defendant argues simply that, because defendant transported plaintiff in a special wheelchair-accessible van, plaintiff cannot show deliberate indifference. However, plaintiff attests, and defendant does not dispute in the context of this motion, that he told the transporting officers of his condition and his need to be transported lying down and that he also "pleaded with and begged the transportation officers to

loosen my chains or let me lie down[, but m]y request was denied." Munson Decl. ¶¶ 5-8. A reasonable jury could credit that testimony and find that the transporting officers knew of a likely risk of harm and failed to act. Likewise, a jury might reasonably choose to accept defendants' version of the facts. The point is, however, plaintiff has raised a triable issue as to matter.

In the reply brief, defendant raises two new arguments: (1) that plaintiff has failed to proffer evidence that his requests (to be transported lying down or for defendant to loosen the restraints) were reasonable accommodations and (2) that plaintiff has failed to proffer evidence that the manner of transport employed was not reasonably related to a legitimate penological purpose. As defendant did not argue in its moving papers that plaintiff had no evidence on these points, it is not surprising that plaintiff did not offer any such evidence in opposing the motion. Plaintiff has not had the opportunity to respond to these new arguments and the court should disregard them. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir.2009) ("arguments not raised by a party in an opening brief are waived.") (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir.1990)).

<u>Toilet and Shower Claims.</u>  Defendant argues that plaintiff's claims regarding the showers and toilet he was provided at CMF fail because plaintiff lacks sufficient evidence that the facilities did not comply with the ADA Accessibility Guidelines ("ADAAG"). *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008) (holding that a plaintiff suing for alleged violations of Title III of the ADA "bears the burden of showing a violation of the ADA Accessibility Guidelines, the substantive standard of ADA compliance."). In reliance on *Doran*, defendant argues that plaintiff cannot rely only on his own declaration that the shower and toilet were not ADA-compliant.

In *Doran*, the plaintiff offered his declaration that he scraped his knuckles on the edge of the aisles while shopping at a convenience store as evidence that the aisles were not ADA-compliant. 524 F.3d at 1048. The ADAAG required that aisles be at least 36 inches wide. *Id.*

10

The court concluded that the plaintiff's testimony, unsupported by any measurements, was insufficient to demonstrate non-compliance with the 36-inch mandate. *Id.*

Defendant also relies on *Wilson v. Tony M. Sanchez & Co.*, No. Civ. S-07-0822 JAM GGH, 2009 U.S. Dist. LEXIS 8183 (E.D. Cal. Jan. 26, 2009). In that case, this court concluded that the plaintiff had failed to raise a triable issue of fact that a restaurant had violated the ADA by failing to remove architectural barriers which allegedly obstructed his access and use of the restaurant. *Id.* at *7-9. Plaintiff's sole evidence was his declaration, which contained "various measurements relating to alleged architectural barriers such as slopes, heights, levels of landings, poundage of pressures," but which failed to indicate how plaintiff had acquired those measurements. *Id.* "Because [plaintiff] did not state that he was personally involved in any of the measurements to which he testifies, and because personal knowledge cannot be inferred, the statements in [plaintiff]'s declaration referencing such measurements cannot be considered by the Court." *Id.*

With regard to plaintiff's claim that the shower benches at CMF did not come far enough away from the wall, the ADAAG provides specific required dimensions for such seats. 28 C.F.R. Part 36, Appx. A (hereinafter "ADAAG"), § 4.21. Plaintiff provides no such measurements and does not present any opposition to defendant's argument that plaintiff has failed to raise a triable issue of material fact that the shower benches did not comply with the ADA. As in *Doran*, plaintiff's allegation that he fell off the bench, without any supporting measurements, is insufficient to raise a triable issue that the bench did not comply with the ADAAG. Accordingly, summary adjudication of plaintiff's claim that the shower benches were too small is appropriate.

With regard to plaintiff's claim that the shower lacked grab bars, plaintiff has failed to support that assertion or even mention it in his opposition papers. Accordingly, summary adjudication of plaintiff's claim that the shower lacked grab bars is appropriate. *See Celotex Corp.*, 477 U.S. at 322-23.

With regard to plaintiff's claim regarding the toilets, however, the undersigned agrees with plaintiff that neither *Doran* nor *Wilson* support defendant's request for summary adjudication. Unlike *Doran*, the dispute here does not center on the dimensions of a certain object, but rather on the simple requirement that a certain object – grab bars – be present. *See* ADAAG § 4.17.6. And, unlike *Wilson*, plaintiff has proffered a declaration based on his personal knowledge that no grab bars were installed in the toilets to which he was given access. While it is undisputed that plaintiff was given incontinence pads and a rolling commode, plaintiff attests that these measures were inadequate for various reasons. Plaintiff has raised a triable issue of fact that the toilet facilities he was provided at CMF did not comply with the ADA.

Defendant argues in the reply brief that plaintiff has failed to raise a triable issue showing that the ADAAG apply at all or that, if they do, that defendant did not have grab bars installed in a single bathroom (which defendant contends is its sole obligation under the ADAAG, if they apply). These new arguments raised for the first time in defendant's reply should be disregarded.

<u>Condom Catheters Claim.</u> Defendant argues that it had no duty to provide plaintiff with condom catheters under the ADA and RA. While the applicable regulations indicate that most public entities need not provide "individually prescribed devices," the court agrees with plaintiff that, as administrator of a prison in which plaintiff was incarcerated, defendant was obliged to provide plaintiff with appropriate catheters. *Compare* 28 C.F.R. § 35.135 (stating that a public entity is not obliged to provide "individually prescribed devices, such as prescription eyeglasses or hearing aids . . .") *with* 28 C.F.R. Part 35, appx. A (stating that detention facilities are "unique facilities under title II" that must provide accommodation to prisoners who otherwise have little recourse, and specifically mentioning provision of catheters). Plaintiff, as a prisoner, did not have the option of obtaining catheters for himself.

Defendant next argues that the undisputed facts show that plaintiff was deprived of condom catheters for a period of time not "by reason of his disability" but instead because they

had "run out." Defendant does not dispute plaintiff's assertion that the catheters are readily available at pharmacies nor explain why none were obtained therefrom. Thus, the instant case is unlike *Estate of Martin v. Cal. VA*, on which defendant relies, where the evidence showed that the allegedly discriminatory action was attributable to lack of resources. 560 F.3d 1042, 1048-49 (9th Cir. 2009). Here, there is evidence that defendant could have obtained the needed catheters with some extra effort, and defendant does not argue that it lacked the resources to do so. And while plaintiff testified at deposition that he did not believe he was denied the catheters because of his disability, plaintiff lacks the personal knowledge to provide evidence on this point. Viewing the evidence in the light most favorable to plaintiff, the undersigned concludes that plaintiff has raised a triable issue as to whether his disability was a motivating factor in defendant's failure to provide him with condom catheters.

<u>Canteen Claim.</u> Defendant argues that the undisputed facts show that plaintiff was not deprived of canteen snacks by reason of his disability. Plaintiff raises no opposition to this argument and presents no evidence regarding his canteen claim. Accordingly, summary adjudication of that claim in defendant's favor is appropriate.

**IV. Recommendation**

Accordingly, it hereby RECOMMENDED that the October 28, 2011 motion for summary judgment filed by defendant be granted as to plaintiff's claims that the CMF shower facilities and canteen services violated the ADA and RA and otherwise denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

13

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 8, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14